# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **TRILLIANT HEALTH, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| **NUVASIVE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

Comes now Plaintiff Trilliant Health, Inc. ("Trilliant" or "Plaintiff"), by and through counsel, and makes the following allegations against NuVasive, Inc. ("NuVasive" or "Defendant") busted upon its knowledge, information, and belief:

## INTRODUCTION

1. This is an action by Trilliant to recover its damages for Defendant's anticipatory repudiation/breach of the parties' written contract.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Trilliant Health, Inc., is a corporation formed under the laws of Tennessee with its principal place of business located at 2 Maryland Way Brentwood, Tennessee 37027.

3. Defendant, NuVasive, Inc., is a corporation formed under the laws of Delaware with its principal place of business located at 7475 Lusk Blvd. San Diego, California 92121.

4. NuVasive is registered with the Tennessee Secretary of State Division of Business Services, Department of State, to transact business in Tennessee. NuVasive's registered agent for

service of process in Tennessee is Cogency Global, Inc., 992 Davidson Drive, Ste B Nashville, Tennessee, 37205.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is in excess of $75,000 exclusive of interest and costs, and this action is between citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions described herein occurred in this district.

## FACTUAL ALLEGATIONS

7. On or about April 13, 2021, representatives from NuVasive contacted Trilliant to inquire about access to Trilliant's proprietary data analytics platform which allows customers to explore surgical claims data ("surgical episodes") for procedures performed at facilities in defined geographical markets. Prior to this contact, Trilliant had not solicited business from NuVasive.

8. Trilliant obtains healthcare claims data from certain healthcare claims clearinghouses. Trilliant's data analytics platform allows customers to explore surgical volumes over time by market share, payer type, service line, and surgery type, as well as referral and Primary Care Provider patterns.

9. NuVasive provides minimally invasive, procedurally-integrated spine solutions to surgeons and healthcare facilities that include software systems for surgical planning access instruments and implantable spinal hardware, as well as intraoperative neuromonitoring services to surgeons and healthcare facilities. NuVasive's website represents that it has approximately 2,900 employees in 25 locations worldwide with net sales of $1.14 billion in 2021.

10. NuVasive wanted access to Trilliant's surgical data analytics platform so it could identify surgeons (and associated practice groups) that performed certain spine procedures and the facilities where the procedures were performed in order to target these surgeons and facilities as part of their efforts to sell surgical spine implants and related products.

11. On May 20, 2021, Trilliant sales representative Preston Walls traveled to NuVasive's San Diego offices to provide a live demonstration of the data analytics platform, which in this case consisted of Trilliant's surgical data asset and Workbench, an interface that allows customers to query the surgical claims data.

12. At the May 20, 2021 live presentation, NuVasive's Senior Director of Strategic Accounts, Jay Colehour, and his team made specific requests for Mr. Walls to perform certain data queries for two geographic regions Mr. Colehour and his team had previously identified and selected—San Diego and Tampa Bay.

13. Following the presentation, Mr. Colehour asked Mr. Walls to provide him a draft agreement prior to Memorial Day Weekend. Further, Mr. Colehour was so impressed with Trilliant's data analysis platform he inquired about having exclusive access to Trilliant's data analytics platform to the exclusion of NuVasive's competitors.

14. Mr. Colehour also requested that Trilliant provide NuVasive with two separate sample data sets from the San Diego area—a market NuVasive knows well, and thus was well-positioned to analyze—so that Mr. Colehour could "pressure test" the data and confirm that it met NuVasive's use case before signing a contract. Although it was uncommon for Trilliant to provide the quantity of data requested by Mr. Colehour, Trilliant honored Mr. Colehour's request.

15. On June 24, 2021, the parties executed a five-year Master Services Agreement giving NuVasive access to Trilliant's surgical data analytics platform and a one-year exclusivity provision preventing Trilliant from offering certain NuVasive competitors access to the platform.

16. Pursuant to the Agreement, NuVasive agreed to pay a $253,300 annual fee for five years.

17. The Agreement gives NuVasive access to national surgical episode data relating to 23 specific CPT codes identified and selected by NuVasive.

18. NuVasive made the first payment of $146,650 (including the $20,000 implementation fee) on August 16, 2021.

19. After NuVasive had signed the Agreement, Mr. Colehour informed Mr. Walls that NuVasive had not tested the two data sets that Trilliant provided at NuVasive's request in early June 2021, which was before the Agreement was signed.

20. In approximately September 2021, Mr. Colehour left NuVasive.

21. In November 2021, months after Mr. Colehour left NuVasive, Andrew Burns, Senior Manager of Commercial Strategy and Analytics for NuVasive, contacted Mr. Walls and requested that the two have a call to discuss the Agreement.

22. During the call, which was held on December 2, 2021, Mr. Burns asked Mr. Walls whether the parties could mutually agree to terminate the Agreement without NuVasive incurring a fee and raised concerns regarding the volume of Trilliant's data but did not identify a particular geographic region that NuVasive regarded as problematic.

23. Trilliant refused to voluntarily terminate the Agreement.

24. The Agreement does not require that Trilliant provide any specific volume of claims in any particular geographic area. Further, Section 10 of the Agreement expressly disclaims

liability as to the completeness or accuracy of the data because Trilliant has no control over the claims data it receives from the third-party claims clearinghouses from which it purchases claims data:

> <u>DISCLAIMER OF WARRANTIES</u>. ALL SERVICES AND TRILLIANT MATERIALS ARE PROVIDED "AS IS," AND TRILLIANT HEREBY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AND TRILLIANT SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT, AND ALL WARRANTIES ARISING FROM COURSE OF DEALING, USAGE, OR TRADE PRACTICE. WITHOUT LIMITING THE FOREGOING, TRILLIANT MAKES NO WARRANTY OF ANY KIND THAT THE SERVICES OR TRILLIANT MATERIALS, OR ANY PRODUCTS OR RESULTS OF THE USE THEREOF WILL OPERATE WITHOUT INTERRUPTION OR BE SECURE, FREE OF HARMFUL CODE OR ERROR FREE OR THAT THE SERVICES OR TRILLIANT MATERIALS WILL INCLUDE ANY FUNCTIONS OR FEATURES NOT EXPRESSLY STATED IN THIS AGREEMENT OR THE APPLICABLE ORDER FORM. TRILLIANT DISCLAIMS RESPONSIBILITY FOR ANY ERRORS IN THE TRILLIANT MATERIALS SOURCED FROM THIRD PARTIES AND FOR ANY CONSEQUENCES ATTRIBUTABLE TO OR RELATED TO ANY USES, NONUSE, OR INTERPRETATION OF INFORMATION CONTAINED IN OR NOT CONTAINED IN THE TRILLIANT MATERIALS. TRILLIANT WILL NOT BE DEEMED TO BE ENGAGED IN THE PRACTICE OF MEDICINE OR DISPENSING MEDICAL SERVICES. CLIENT ACKNOWLEDGES AND AGREES THAT DATA USED BY TRILLIANT TO PROVIDE THE SERVICES AND TRILLIANT MATERIALS UNDER THIS AGREEMENT IS PROVIDED BY THIRD-PARTY SOURCES. TRILLIANT SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO CLIENT WITH RESPECT TO ANY ERRORS IN THE DATA, THE COMPLETENESS AND ACCURACY OF THE DATA, OR THE REPORTING, IDENTIFICATION, CLASSIFICATION, CODING, OR CATEGORIZATION OF THE DATA CONTAINED IN THE TRILLIANT MATERIALS, USED TO PROVIDE SERVICES, OR OTHERWISE MADE AVAILABLE UNDER THIS AGREEMENT. CLIENT FURTHER ACKNOWLEDGES AND AGREES THAT DATA AND CLAIMS INCLUDED IN SERVICE LINES OR MEDICAL EPISODES ARE DETERMINED BY TRILLIANT IN ITS SOLE AND UNFETTERED DISCRETION, AND TRILLIANT SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO CLIENT WITH RESPECT TO SERVICE LINES OR MEDICAL EPISODES IN THE TRILLIANT MATERIALS OR OTHERWISE USED TO PROVIDE SERVICES OR MADE AVAILABLE UNDER THIS AGREEMENT.

25. Although Trilliant had performed its obligations under the Agreement, on February 7, 2022, NuVasive sent Trilliant a notice of termination (the "Termination Letter," a copy of which is attached as Exhibit A), which purports to terminate the Agreement based on an alleged material breach pursuant to Section 9.3(b)(i) of the Agreement.

26. The Termination Letter does not identify how Trilliant materially breached the Agreement or explain why the alleged breach was incurable.

27. Following its receipt of the Termination Letter, Trilliant responded to the Termination Letter by letter dated February 17, 2022 denying any breach and demanding, pursuant to Section 14.10 of the Agreement, that the parties engage in the required pre-suit mediation so that Trilliant could file a lawsuit for NuVasive's wrongful termination of the Agreement if the mediation was unsuccessful.

28. Despite NuVasive's allegation of material breach by Trilliant, NuVasive made the next $126,500 semi-annual payment on February 28, 2022.

29. On May 26, 2022, the parties appeared in person in Nashville, Tennessee for the required mediation. The mediation was unsuccessful.

## CAUSES OF ACTION

### Count I: Breach of Contract/Anticipatory Repudiation

30. Plaintiff incorporates by reference Paragraphs 1 through 29 of the Complaint.

31. Defendant, NuVasive, Inc., entered into the Master Services Agreement with Plaintiff on June 24, 2021. The Agreement is valid and binding and shall be interpreted in accordance with the laws of the State of Delaware.

32. Trilliant has performed all obligations under the Agreement.

33. The term of the Agreement is five years and ends on June 2026.

34. Because Trilliant has not breached the Agreement, NuVasive has no legal right to terminate the Agreement.

35. NuVasive wrongfully terminated the Agreement by letter dated February 7, 2022.

36. Defendant's Termination Letter and actions and position at the mediation on May 27, 2022, is an anticipatory repudiation under Delaware law, which Plaintiff is entitled to treat as a breach of contract and immediately seek damages.

37. As a result of NuVasive's breach, Trilliant has been damaged and will continue to suffer damages. The remaining fees owed by NuVasive under the Agreement total over $1,000,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Trilliant Health, Inc., prays for a judgment in favor of Trilliant and against NuVasive for the following relief:

1) An award of damages in an amount to be proven at trial but in no event less than $1,000,000 for NuVasive's breach of the Agreement;

2) Pursuant to Section 14.13 of the Agreement, an award of Trilliant's reasonable attorneys' fees, court costs, and all expenses incurred in prosecuting this action;

3) An award of pre- and post-judgment interest and/or interest as provided by Section 6.5 of the Agreement; and

4) For such other and further relief to which this Court finds Trilliant is entitled.

DATED: June 2, 2022

Respectfully submitted,

*/s/ E. Steele Clayton, IV*
E. Steele Clayton, IV (BPR 017298)
Wesley S. Love (BPR 036869)
BASS, BERRY & SIMS PLC
150 Third Ave. S., Suite 2800
Nashville, TN 37201
(615) 742-6200
sclayton@bassberry.com
wesley.love@bassberry.com

*Attorneys for Trilliant Health, Inc.*